Lull & Skinner Company, Appellant, v. Kemmerer Vehicle Company et al., Appellees.

Account stated: when conclusive.   As a general rule a stated account will not be held to include unliquidated claims not mentioned therein and which have arisen outside the ordinary course of business dealings of the parties; but where all the

relations of the parties are referable to a written contract and a statement is rendered purporting to contain all dealings between the parties and including claims for damage because of failure to comply with the contract, the party rendering the statement and accepting settlement in accordance therewith is precluded from claiming further damages.

*Appeal from Poweshiek District Court.* — HON. BYRON W. PRESTON, Judge.

FRIDAY, DECEMBER 13, 1907.

ACTION at law to recover damages for a breach of contract. The case was tried to the court without a jury, resulting in a judgment in favor of defendants for costs. Plaintiff appeals.— *Affirmed.*

*Norris & Norris,* for appellant.

*Will C. Rayburn,* for appellees.

BISHOP, J.— The plaintiff company is a manufacturer of wagons and buggies, having its place of business at Kalamazoo, Mich., and the defendant vehicle company is a dealer in property of such character, with its principal place of business at Magnolia, Ark. In December, 1901, these parties entered into a contract in writing by the terms of which the defendant contracted to purchase of plaintiff four hundred vehicles, the same to be shipped in car lots as ordered during the early months of the following year. The vehicles contracted for are specifically described in the writing, and prices are agreed upon. A provision of the contract — and it is the one to which more particularly this suit has reference — is that the vehicle company " are to have the privilege of increasing this order by two hundred and fifty jobs, more or less, during the season of 1902." It is not disputed but that during the spring and summer of 1902 there was shipped by plaintiff to defendant on its

orders four hundred vehicles. And it is agreed that these had been fully paid for prior to the commencement of this action. The contention of plaintiff is that on March 12, 1902, defendant exercised its option contained in the contract and sent to plaintiff orders for one hundred and eight vehicles to be shipped in car lots, cars to be shipped May 1, 1902, May 10, 1902, and May 20, 1902, respectively, and to such point or points of destination as might be designated. And plaintiff says that, acting thereon, it proceeded to gather together the materials for such vehicles, and to prosecute the work of their production; that while so engaged, and having expended a large sum of money in connection therewith, defendant arbitrarily. canceled its orders and declared it would not receive the vehicles so ordered. Plaintiff says that thereupon it disposed of such vehicles as best it could but at a loss, and judgment is demanded for the amount of such loss. The defendant presented two matters of defense: First, it says that the orders of March 12, 1902, were given to complete the contract number of four hundred vehicles, and that at no time did it seek to exercise the option embraced in the contract; and, second, it pleads that in April, 1903, the account between the parties was stated by plaintiff in writing, and the balance thereby shown to be due from it was fully paid.

The orders for shipments were all in writing, and such were introduced in evidence. Considering these writings by themselves, it would seem that vehicles in excess of four hundred in number were called for. But defendant sought to explain in evidence that some of the orders were duplicates of others, and that this arose through misunderstandings and other causes. Thus it is said that in one instance a car load was diverted by plaintiff to another customer, making another shipping order by defendant necessary, and that as to other car load lots the orders were duplicated, due to a desired change in shipping directions, destination, etc. These matters are met by plaintiff with a denial, and there

is a decided conflict in the testimony. We shall not undertake to decide where lies the preponderance on the subject. The trial court went over the subject, and its finding has the effect of a jury's verdict, and we are bound by it. *Roe v. McCaughan,* 113 Iowa, 274.

But if this were not so, we should feel required to hold that the further defense had been made out. After a somewhat prolonged dispute as to the state of the indebtedness due from defendant to plaintiff — carried on not only by correspondence but by personal interview — in the course of which the defendant was not only refusing to accept of and pay for any further shipments, but was challenging the accuracy of plaintiff's accounts and making claims for damages arising out of defective work and by delayed and erroneous shipments, plaintiff, in April, 1903, on the demand of defendant, rendered a statement of account in writing showing a balance due plaintiff, and such statement was acceded to by defendant and the balance paid. This statement, it is to be observed, was rendered long after the buggies, etc., claimed by plaintiff to have been ordered by defendant, and on which it had expended labor and materials as alleged, had been sold to others by plaintiff, and hence, after the damage to plaintiff here sued for had been accurately ascertained and determined. Notwithstanding this, there was no suggestion in the statement of account, or the correspondence having direct relation thereto, of any claim for such damage. Nor was any such claim made until shortly before the commencement of this action in August, 1903.

It is undoubtedly true, as argued by counsel for appellant, that ordinarily an account stated has to do only with debits and credits as evidenced by books or memoranda of accounts. And, generally speaking, a settlement based on such statement will not be held to include unliquidated claims, not mentioned, and which have arisen outside of or in a way distinct from the ordinary course of business

existing between the parties.   But here was not the case of
a running account between a dealer and his customer.   The
relation between the parties, and the extent thereof, had ori-
gin in and depended, in the first instance, on the contract
writing.   On its own theory plaintiff at the time the state-
ment was rendered, had a claim against defendant arising
out of such contract, being in part on account of vehicles
shipped, and in part on account of vehicles ordered on which
work and material had been expended, and which vehicles
defendant had refused to receive and pay for.   All transac-
tions between the parties, contemplated by the contract, were
at an end; nothing remained but to accomplish a settlement.
With matters standing thus, the statement was prepared and
forwarded.   Therein charge was made for the vehicles which
had been shipped, for extras furnished, etc.   On the other
side of the account was entered credit for cash paid, and,
among other things, credit for damages which had been
claimed by defendant from time to time growing out of
failure on part of plaintiff to ship vehicles as ordered, when
ordered, and to places ordered.   In this situation — and
having in mind that the relations between the parties were
in all respects referable to the one contract — we think the
defendant was warranted in concluding that the balance
shown by the statement presented from the viewpoint of
plaintiff the full measure of its unsettled demand.   And the
court was warranted in finding that defendant, in putting
aside its objections to the account as stated, and in acceding
to the balance, and making payment, did so upon the under-
standing that thereby settlement of all matters growing out
of the contract had been accomplished.   Accordingly, we
are agreed that it did not remain for plaintiff to thereafter
bring forward its present claim for damages and predicate
a suit thereon.   It is a well-settled rule that, where an ac-
count has been settled, impeachment thereof can be made
only on the ground of fraud or mistake.   1 Am. & Eng.
Ency. 462.

And the principle has application to the settlement of accounts arising under a contract which is at an end as. well as to an open or current account.   As said by Marshall, C. J., in *Chappedelaine v. Dechenaux,* 4 Cranch. (U. S.) 306 (2 L. Ed. 629): "No practice could be more dangerous than that of opening accounts which the parties themselves have adjusted, on suggestions supported by doubtful or by only probable testimony."

From what has been said it follows that the judgment must be, and it is, *affirmed.*